FILED 15 NOV '22 15:42 USDC-ORE

# IN THE UNITED STATE DISTRICT COURT
# DISTRICT OF OREGON

405 East 8ᵀᴴ Avenue
Eugene, Oregon 97401
United States
(541) 431-4100

6:22-CV-01789-AA

THE HABITAT INSTITUTE,
THOMAS A. O'NEILL (O'NEIL),
*Plaintiff,*

v.

THE UNITED STATES ARMY CORPS OF ENGINEERS:
JODI CLIFFORD, NEDENIA KENNEDY;
NATIONAL ECOSYSTEM RESTORATION PLANNING CENTER OF EXPERTISE:
GREGORY MILLER, NATHAN RICHARDS, ANDREW MACINNES, GARY YOUNG,
CHESTER JORDAN II., AND BRIAN CHOC, ET AL.,
*Defendants.*

---

THE HABITAT INSTITUTE,
THOMAS A. O'NEILL, *(Per Se)*
P.O. Box 855 Corvallis, OR 97339
Telephone: (541) 753-2199
Tom@thehabitatinstitute.org
vs.
THE UNITED STATES ARMY CORPS OF
ENGINEERS: JODI CLIFFORD, *Chief
Environmental Resource Branch, Los Angeles
District;* NEDENIA KENNEDY, *Leader
Planning, and Policy, South Pacific Division;*
NATIONAL ECOSYSTEM RESTORATION
PLANNING CENTER OF EXPERTISE:
GREGORY MILLER, *Director;*
NATHAN RICHARDS, *Model Review Manager;*
ANDREW MACINNES, *Operating Director;*
GARY YOUNG, *Director;*
CHESTER JORDAN II. (SBN *not found*); AND
*BRIAN M. CHOC (SBN 335644) *Attorney*
915 Wilshire Blvd. Los Angeles, CA 90017
Telephone: (213) 452-3957
Brian.m.choc@usace.army.mil
ET AL.,
*Defendants.*

**COMPLAINT FOR:**

**(1) NEGLIGENCE**

**DEMAND FOR JUDGE'S
DECISION**

**(2) BREACH OF CONTRACT**
**(3) PATENT
INFRINGEMENT**

**DEMAND FOR JURY TRIAL**

1

# TABLE OF CONTENTS

**TABLE OF CONTENTS**                    **Page 2**

**TABLE OF AUTHORITIES**              **Page 3**

**CASE LAW**                                      **Page 4**

**JURISDICTION & VENUE**              **Page 5 to 6**

**INTRODUCTION**                           **Page 6 to 10**

**CLAIMS A, B, C, and D**                **Pages 11 to 36**

**CONCLUSION**                               **Page 37 to 38**

**CERTIFICATE OF WORD COUNT**    **Page 39**

**CLAIM A to D EXHIBITS *(ATTACHED)***

Exhibit A1- Sole Source Justification Aug 14 2017
Exhibit A2 CHAP History Timeline 2012-2017
Exhibit B1 Access to CHAP July 26 2017
Exhibit B2 USACE Model Library CHAP Documentation Claiming Creators
Exhibit B3 Slides of N Richards Sept 2015 Model Policy & Guidance
Exhibit B4 Jesse Ray - Nedenia Kennedy Email Exchange  April 15- April 10 2019
Exhibit B5 2022_05_16 FTA letter
Exhibit B6 Reply to FTA Letter 9-2-2022
Exhibit C1 ONeil  to Clifford 7-1 2019 & 7-20-2018
Exhibit C2 -Jodi Clifford LAD - Regional Approval of CHAP 10-11-2019 (signed)
Exhibit C3 Clifford Response Letter Jan 31 2020 (received Feb 19, 2020)
Exhibit C4 ONeil Final Response Jan 30 2021to Clifford Letter Jan 31 2020
Exhibit C5 Initial Call w ECO-PCX Not Charge CHAP Development Cost if Obtain Regional Approval
Exhibit C6 CHAP Approval July 10 - June 27  2018 Exchange w ECO-PCX old school
Exhibit C7 2018-07-26 Memo - ECO-PCX Single Use Approval - Prado CHAP Model_Signed
Exhibit D1 Balten to ONeil 11-25-2020
Exhibit D2 ONeill to Jordan 7-7-2021 Charting the Claim
Exhibit D3 ONeill to Jordan 7-7-2021 Response for Filing Patent Infringement Claim
Exhibit D4 ONeill Letter to Jordan 7-7-2021
Exhibit D5 ONeil to Jordan 11-4-2021
Exhibit D6 ONeill to Jordan Email String 8-29-2022 to 8-17-2021

# TABLE OF AUTHORITIES

I.      35 U.S.C.S § 271 Infringement of Patent

II.     17 U.S.C.S § 501 Infringement of Copyright

III.    5 U.S.C.S § 551-559 Federal Administrative Procedure Act

IV.     28 U.S.C.S § 2671 et seq. Federal Tort Claims Act

V.      33 U.S.C.S § 2283 Navigation and Navigable Waters –Fish and
        Wildlife Mitigation § 2317 – No Net Loss of Wetlands

VI.     Water Resource Development Act 1986; 2014 (Section 1034 –
        Advanced Model Technologies), 2016, & 2018

VII.    42 U.S.C.S.  §§ 4321-4370f National Environmental Policy Act of
        1969

VIII.   Public Law No. 106-554 Information Quality Act

IX.     5 U.S.C. § 706(2) (A)(1970)

## CASE LAW

United States v. Amdahl Corp., 786 F.2d 387, 392-93 (Fed.Cir. 1986)

United States v. City of Detroit, 720 F.2d 443, 451 (6th Cir. 1983).

Wayne State, 590 F.2d at 633. Accord Ligon Specialized Hauler, Inc. v. Interstate Commerce Comm'n, 587 F.2d 304, 314-15 (6th Cir. 1978)

Louisiana Public Service Comm'n v. Federal Communications Commission, 476 U.S. 355, 106 S. Ct. 1890, 1899, 90 L. Ed. 2d 369 (1986).

Caldwell v. Montoya 10 Cal. 4th 981 (1995)

Whisnant v. United States, 400 F.3d 1177 (9th Cir. 2005)

Forcelli v Gelco Corp., 109 A.D.3d 244 (2013)

COMES NOW the Plaintiff, a 501(c)(3) non-profit scientific and educational organization THE HABITAT INSTITUTE (hereinafter referred to as "Plaintiff" or "O'Neill"), who alleges and complains against Defendants, and each and all of them, as follows:

## JURISDICTION & VENUE

Plaintiff, is, and at all times relevant herein was, residing in the County of Benton, in the State of Oregon; and the venue is proper in the judicial district because it is where the plaintiff resides. (28 U.S.C. 1402). Further, O'Neill is the public charity group's Founder and is the patent proprietor for the science U.S. 7,681,531 B2, System for Assessing Habitat Value, known as, Combined Habitat Assessment Protocols (CHAP).

Plaintiff is informed and believes and based thereon alleges that the following Defendants: THE UNITED STATES ARMY CORPS OF ENGINEERS: JODI CLIFFORD, *Chief Environmental Resource Branch, Los Angeles District;* NEDENIA KENNEDY, *Leader Planning, and Policy, South Pacific Division;* NATIONAL ECOSYSTEM RESTORATION PLANNING CENTER OF EXPERTISE: GREGORY MILLER, *Director;* NATHAN RICHARDS, *Model Review Manager;* ANDREW MACINNES, *Operating Director;* GARY YOUNG, *Director;* CHESTER JORDAN II. (SBN *not found*); AND *BRIAN M. CHOC *Attorney* (Defendants) is, and at all times relevant herein and the venue is proper in this Court because the allegations herein are for the Defendant's infringement on the Plaintiff's patent; injuries, which occurred are within but not

5

limited to the State of Oregon; and federal questions are at issue concerning the federal scientific review process conducted by the Defendants.

## INTRODUCTION:

The Plaintiff has filed this lawsuit to bring into light the Defendants' administrative actions involving The Habitat Institute, and the Defendants' alarming infringement of the federal scientific review process at large.

The Defendants have used their individual power to perform basic lower-level, or "ministerial," decisions, in a manner that is not in accordance with merely implementing the basic policy already formulated. The Defendants have forced Plaintiff into the longest scientific review in U.S. history for fifteen (15) years.

Defendants first approached Plaintiff in 2007, initiating a contract to conduct its first United States Army Corp of Engineers (USACE) preliminary study to prove proof of concept of the—system to assess habitat value—a scientific method designed and developed by Plaintiff called COMBINED HABITAT ASSESSMENT PROTOCOLS (CHAP). CHAP is an analytical tool that is used to conduct habitat assessments, which serve to quantify restoration benefits that inform the cost-effectiveness and cost-benefit analyses, and that contribute to the comparison of alternative project plans, which affect native species, their habitats, and biodiversity at a project site or area. Scientific proof of concept is a procedure where a scientific technique is implemented in order to demonstrate its feasibility, duration, benefit-cost, adverse events, and performance in a full-scale project. These

projects are essential to help determine if the science implemented is likely to succeed. Additionally, the proof-of-concept procedure helps to manage risks and reveal serious deficiencies or flaws in a scientific method before substantial resources are committed to or used for its implementation.

The CHAP science has successfully been scientifically reviewed in 2015-2016 by a USACE U.S. National Academy of Sciences (NAS) process, which is regarded as one of the most prestigious honorary scientific institution in the country. CHAP and informational data sets has also been reviewed by the Columbia River Basin Independent Scientific Review Panel (ISRP), between 2003 and 2012; and this agreed with CHAP's implementation in the State of Oregon to help delist the first fish species in history the Oregon Chub (Oregonichthys crameri) in 2015.

Since the 2007 inception of the partnership between Plaintiff and the Defendants in using and proving CHAP's proof of concept. The Plaintiff's science has undergone numerous scientific reviews including the Defendant's federal scientific review of CHAP science for the past fifteen (15) years. During this time, CHAP is the only science in USACE history (that we are aware of) to be granted five (5) single-use Scientific Approvals by the Defendants'. The CHAP science has successfully undergone and passed more extensive and respected scientific review(s) than most other scientific models in the U.S., that Defendants have Regionally Certified for USACE use. Most recently, the Biden-Harris White House is standing up a new technical work group and initiative for Nature-Based Solutions. USACE with others are hosting a Summit on Engineering with Nature on November 30,

7

2022. They have selected 6 projects from 150 feasibilities studies across the nation to examine in-depth cost-benefits, methods, and ecological outcomes. The South San Francisco Bay Shoreline project was selected as one of the six projects; This project was done by the Institute.

The CHAP science has unequivocally proven to work and is not an issue before this court. The CHAP science has been approved by Defendants for the USACE's use in the following projects:

Big Bear Lake Ecosystem Restoration [W912PL-07-P-0049]; Espanola Ecosystem Restoration Project [W912PP-10-P-0031 Mod# P0001 ]; Sweetwater – Vernal Pools Complex Wildlife Habitat Assessment – Baseline Condition Report (near San Diego); San Juan Creek Flood Risk Management[W912PL-11-P-0026]; San Francisco Bay Shoreline Combined Habitat Assessment [W912P7-12-C-0005 and Purchase Request # W62A2B13200802]; Los Angeles River's Headworks' Baseline Condition and Without Project Ecosystem Restoration Feasibility Study [100-SWW-T26313/ Task 11]; Sun Valley Watershed Ecosystem Restoration [W912PL-11-P-0026]; Habitat Assessment and Modeling for the Prado Basin Feasibility Study [Orange County Water District Agreement No.: 0911]; Los Angeles River Restoration Feasibility Study [100-SWW-T31241/ Task 06];  Upper Penitencia Creek, San Jose, California ~ Environmental and Plan Formulation Support for the Upper Penitencia Creek Flood Risk Management Feasibility Study. Combined Habitat Assessment Protocols or CHAP [W912P7-13-C-0013 and Purchase Request # W62A2B32241457]; Westminster Flood Risk Management

Study [W912PL-13-P-0034]; Aliso Creek Ecosystem Restoration [W912PL-08-F-0009]; Arroyo Seco Ecosystem Restoration Study [W912PL-13-P-0034 – P00003]; Whittier Narrows-Santa Fe Dam Safety [W912PL-13-P-0034 – Option 1].

The issue before this court is that a handful of regulatory managers, named above, have put their individual interests before that of the public and the natural world and have veered from the basic policy to single-use approve a scientific method intentionally preventing the science from regional certification to wrongfully conduct over a dozen—proof of concept projects—at a lower cost to the USACE, and when USACE Headquarters refused to accept anymore "single-use" scientific approvals of the CHAP science instead of certifying the science; the Defendants' intentionally dug the highest vetted ecology in this nation a grave and in so doing have prevented the Western United States from benefiting from CHAP's use.

Given our current state of the environment, specifically the loss of biodiversity and the effects of climate change, this is one of the most important cases that need to be decided in our current lifetime. This is because most habitat evaluation methods that are routinely used by the federal government find their origin in 30 to 45 year –old science. Even the Biden-Harris White House acknowledges that Nature-Based solutions have been undervalued.

What you need to be aware of is that such a review is mandated by the US Army Corps of Engineers (USACE) by their Engineering Circular (EC) 1105-2-412, which gives the procedures for Assuring Quality Planning Model. We were told at

9

our initial model review (in 2007) that our approach would take about 1 year. This is because existing models had a stated review timeline from 9 months to 1-year model. The Habitat Institute is asking the Federal District Court to decide the merits of this case based on Claims A to D. Note: Exhibits that follow are associated with the Claim and not in order of use.

The Institute seeks in Claim #A to have the District Court direct the USACE to follow their procedures as codified in statutes to complete the Regional Review process as per their directives, conversations, and contract/agreement with us. There is only one issue left which is identified as a Low-Concern by the Science Review Panel, regarding how would the USACE access our method and data. We gave them 5 possibilities in our July 26, 2017, Memorandum, and we were open to other solutions.

The Institute seeks Claims B, C & D as compensation from the USACE for years of delay. Ultimately, the Institute would want to have at least 12 years of funding (to cover the period of years that we were denied certification/approval) without further reviews. We seek, at a minimum. that the USACE fund the structure for the approach, data (including imagery), marketing, training, consultation, and dissemination, to allow federal, state, and tribal entities to use freely a credible habitat and biodiversity assessment approach. This compensation would address the last remaining issue in the Regional Review process of our approach. The Institute envisions this platform to cover all of California, Oregon, and Washington. Depending on funding other states may also be included.

## CLAIM A. THE DEFENDANT'S VIOLATION OF THE ADMINISTRATIVE

## PROCEDURE ACT (APA); DEMANDS A JUDGE'S DECISION.

Generally, courts employ a three-part test for determining the validity of administrative regulations. First, a court should "inquire whether the regulations were promulgated in excess of statutory authority." Ibid. Second, the regulations must not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2) (A)(1970). Finally, the courts should determine whether the agency "followed the necessary procedural requirements" promulgating the regulations. *(Wayne State, 590 F.2d at 633. Accord Ligon Specialized Hauler, Inc. v. Interstate Commerce Comm'n, 587 F.2d 304, 314-15 (6th Cir. 1978)).*

Agencies are bound to follow their own regulations and rules, Confederated Tribes, 746 F.2d at 474, and to stay within the bounds of the powers delegated to them by Congress. *United States v. Amdahl Corp., 786 F.2d 387, 392-93 (Fed.Cir. 1986).* Furthermore, "an [**18]  agency charged with implementation of a statutory framework ordinarily possesses no authority to deviate from or abdicate its statutory responsibilities." *United States v. City of Detroit, 720 F.2d 443, 451 (6th Cir. 1983).* Finally, a statutory scheme should be read so as to avoid creating internal conflicts when a more consistent interpretation is available. *Louisiana Public Service Comm'n v. Federal Communications Commission, 476 U.S. 355, 106 S. Ct. 1890, 1899, 90 L. Ed. 2d 369 (1986).*

5 USCS § 556 Enforce the APA to have USACE complete the Regional

Review of the Habitat Institute's habitat and biodiversity method called Combined Habitat Assessment Protocols or CHAP. APA governs the process by which federal agencies develop and issue regulations and includes final rulemaking in the Federal Register. This Act has been called the bill of rights for those Americans whose affairs are controlled or regulated by the federal government. The next three Claims that follow are linked and support that USACE did not follow through with the Assuring Quality Planning Model procedures [EC 1105-2-412 March 31, 2011, & March 31, 2013]. These procedures are associated with the Engineer Regulation 1105-2-100 Planning Guidance Notebook [cited in the Final Rule 33 CFR part 36 - Federal Register Volume 86, Number 6, 01/11/2021] that were developed to comply with The Information Quality Act [Public Law No. 106-554]. Our method is used to determine impacts and mitigation that are required under the National Environmental Policy Act (NEPA) of 1969 [42 U.S.C. 4321-4347) and is implemented by USACE pursuant to 33 CFR part 230, Procedures for Implementing NEPA. Finally, by the USACE staff's own admissions and conduct, CHAP is worthy of Approval. See Michael Scuderi's email to Nathan Richards on May 12, 2017, which states:

"Bottomline is this model (CHAP) is at least as good as anything we have certified for these habitats, and in my opinion is actually better."

Also see Exhibit A1 – Sole Source Justification August 14, 2017, where it states:

"No other methodology which is applicable to the Los Angeles District Area of Operations is this far along in the certification process.......Failure to move the

NWHI [Institute] methodology successfully through the certification process will have wasted the last several years of effort and leave the Los Angeles District and potentially the South Pacific Division without a Corps-certified habitat evaluation methodology, which has the potential to paralyze the Civil Works planning program in the short term."

Further see Thomas Keeney's email to Thomas O'Neill and Nedenia Kennedy on August 29, 2018, which states:

"Tom O'Neil and Paul Ashley, and myself introduced the Corps to CHAP 11 years ago. Now with 5 single use approvals, 7 presentations to various federal and state agencies, nearly a decade of technical and independent review, possibly CHAP is getting closer to SPD regional approval."

Finally, see, Exhibit A2 under History- (bullet point #3):

"Habitat Institute... whose lead developed CHAP, has always provided all the spreadsheets for District and PCX review upon request. The sheer size of the spreadsheets prevents a quick assessment of the impacts of various variables. This is actually a strong point of the model since obvious manipulation of variables to get desired results is not easily done."

## CLAIM B. COMPLAINT FOR NEGLIGENCE PURSUANT TO THE FEDERAL TORT CLAIM ACT (FTCA): DEMANDS A JUDGE'S DECISION.

Plaintiff does not allege that the responsible regulatory managers failed to

exercise their discretion or judgment at all. Rather, Plaintiff alleges in essence that the regulatory managers applied the wrong design standards and erred in their exercise of judgment because they were unaware of the correct standards. These allegations simply claim an "improper scientific review," that is, carelessness, bad judgment, or abuse of discretion. But under Caldwell, such a claim "cannot divest a discretionary policy decision of its immunity." (*Caldwell, supra, 10 Cal.4th at p. 984; see id. at p. 984, fn. 6.*).

The USACE has used a "discretionary function" to stall, extend, and stop the Regional Certification/Approval of our habitat and biodiversity evaluation method, scientific review, and timeline from 1 year to 12.6 years to 15 years. The Institute is supported by a scientific review process, but what cannot happen is to go in front of a Science Review Panel, address their questions and concerns, and meet regional certification/approval requirements only to have upper staff derail the approval covertly behind closed doors. This was done in our case by making unsubstantiated statements to others that it is a "black box" and therefore not worthy of approval. USACE staff then employed a delay tactic to deny regional approval. That is, the ECO-PCX gave conclusive weight to at least the view of one or more Administrator(s) and thereby circumvented the unique structure of the review process. This explains their motivation for employing delay and denial tactics all of which are—not found—within a legitimate Science Review process and certainly do—not support—the purpose or procedures for Assuring Quality Planning Models. This kind of statement went on for at least 7 years that we have been able to

document through our Freedom of Information Act request (see Exhibit B4, Email from Jesse Ray to Nedenia Kennedy April 12, 2019; and Legal Question Section, Part #2, paragraph 4 below). During this time, the record shows we were always told our approach was capable of receiving Regional Certification/Approval. On January 31, 2020, the USACE stopped the review citing lack-of-funds to continue (see Exhibit C3). However, unbeknown to the Institute, the USACE secretly terminated the regional model review process a week later (see Dr. Kennedy's email on February 6, 2020).

The policy to use certified or approved models for all planning activities is mandatory. The Regional Model Review process is guided by a set of procedures that are found in Assuring Quality Planning Model procedures [EC 1105-2-407 May 31, 2005, & EC 1105-2-412 December 30, 2009, and March 31, 2011] that outline the scientific review process with specific procedures including stated timelines, like completing the regional reviews in 9 months to 1-year. To allow discretionary decisions to function within a science review procedure negates a scientific standard (to be timely and not include unsubstantiated allegations) and thereby impairs the purpose of The Information Quality Act and USACE Guidance to align with principles and timeline of SMART Planning and with Engineer Regulation 1105-2-100 Planning Guidance Notebook [Final Rule 33 CFR part 36 - Federal Register Volume 86, Number 6 01/11/2011]. Additionally, the Smart Planning process has a milestone for a project to have an Environmental Impact Statement within 3-years. Conducting reviews in a timely manner [ER 1165-2-217 May 2021 p. 41] is crucial

15

to assure the quality, reliability, and usability of the USACE model review certification/approval process. The reason stated for stopping the Regional Review Model Certification/Approval was a lack of funding. In Whisnant v. United States [Court of Appeals for the Ninth Circuit, 2/18/2005, Seattle WA No.04-35340] where Whisnant charged that the government was negligent in following through on those procedures. Thereby using a lack of budget does not make their failure to perform a discretionary function for purpose of the FTCA. To hold otherwise would permit the discretionary function exception to all but swallow the FTCA. Budgetary constraints underlie virtually all government activity. The USACE's failure to complete the Regional Review is procedural based not policy and lack of model approval has prevented the Institute from marketing and using a government-certified approach for 15 years now. Additionally, the Los Angeles District and Ecosystem Restoration Planning Center of Expertise in their Model Library further claim to be Creators of our CHAP approach (see Exhibit B2, also note our name, logo, and patent number on the cover page). Making this assertion is a further infringement of our copyrights by plagiarism. Thereby taking credit for the Institute's work.

## CLAIM C. COMPLAINT FOR BREACH OF CONTRACT:
## DEMAND FOR JURY TRIAL.

The USACE Environmental Division staff be allowed to their written and verbal agreement with the Institute.  USACE staff was caught being dishonest to

the Institute in that they had known for several years (based on emails correspondence obtained from the Freedom of Information Act- FOIA) that the Prado Basin Study was identified for a Single Project Use Approval though since 2007 we had been told Regional Model Certification Approval was being sought. We had already received 4 Single Project Approval and did not need another to determine the model's capability. In June and July 2018, it was clearly identified to the Institute that our model documentation needed to be changed from Regional to Single Use Approval. We were reluctant given we had now been 11 years in the model approval process. But the Chief of the Environmental Resource Branch, and the assigned contracting officer, made agreements over the phone and I followed up with emails clearly stating my position and understanding whereby the Institute would change the model documentation reliant on the Corps meeting those conditions. One of the principal statements was that Regional Approval would be concluded in months not a year. Needless to say, 1-year later no change occurred, and USACE Environmental staff totally breach our contract conditions.

Finally, to add insult to injury, a) the USACE's Los Angeles District and Ecosystem Restoration Planning Center of Expertise even laid claim as creators of our work in their Model Library, and b) a new 5-year Indefinite Delivery Contract (IDC) was won by the Institute as part of a team with DR Reed Associates for the Los Angeles Division not-to exceed about $9 million on January 14, 2020, USACE staff elected not to pursue Regional Approval January 31, 2020. This effectively negated our involvement with this contract. Finally, the written documentation in

emails supports that the Institute made an offer to resolve the USACE model certification/approval situation reliant on conditions the USACE need to perform. USACE Chief of the Environmental Resource Branch accepted our conditions verbally on the phone then I sent an email confirming our agreement. (Note: both Oregon and California recognize oral contracts).

Lastly, regarding stopping the CHAP Regional Model Review because of a lack of funding, please be aware that funding is addressed in EC 1105-2-412 item # 13 - Funding mechanisms. Funding for model certification will be secured from various sources depending on the model category. For corporate models with National applicability, Headquarters will finance the costs associated with certification. For models that have a specific study/local applicability, the costs of certification will be covered by the specific study or studies. The cost of certification will be considered when developing the PMP for a particular study if the use of a model that requires certification is planned. For models of regional application, the MSCs could consider sharing the costs of certification among the districts that would use the model. Financing required for the administration of the PMIP by each PCX, other than the costs associated with model certification, will be included in the annual budget request for each PCX.

CLAIM D. COMPLAINT FOR PATENT INFRINGEMENT:

DEMAND FOR JURY TRIAL.

Patents and Protection of Patent Rights established in 35 U.S.C. Our

situation involves USACE research and Los Angeles District staff developing and using a habitat evaluation model for the East San Pedro Bay Feasibility study. Their rationale for developing this new model which began in February 2016 was, there was no available model. Yet 2 years prior, the Institute received a Single Project Use Approval for South San Francisco Bay Shoreline Feasibility Study on January 16, 2014. Interestingly, the stated rationale for using our CHAP approach for San Francisco Bay project was "ecosystem restoration options were evaluated by comparing their costs to ecosystem restoration outputs. To determine the best approach to quantifying ecosystem restoration benefits in accordance with USACE planning policy, the project sponsors engaged internal USACE resources, resource agencies, and a consultant to examine the different available methods for evaluating the value of tidal wetlands. Of these methods, the Combined Habitat Assessment Protocols (CHAP) provided the most complete and sophisticated approach to evaluating fish and wildlife habitat value, and had the additional advantage that USACE planning certification of this model for regional use was in progress. Development and certification of new models to evaluate ecosystem restoration outputs for this study was judged to be impractical given the study schedule and budget." CHAP was already developed and capable to address the East San Pedro Bay project. Hence, moving forward with the East San Pedro Bay model went contrary to their own procedures found in Model Circular 1105-2-412 (Section #8, page 5). Finally, the development of the East San Pedro Bay model began in 2016 and in July 2018 the ECO-PCX gave it Regional Certification.

Information presented here is documented by emails, reports, or other documents that were either obtain by direct emailing/mailing by USACE staff or from the Institute's Freedom of Information Requests from 2020 to 2022. The information presented here supports the Institute's Claim #4. Thus, dates, times, and email, letters, document statements are not in dispute, and they confirm and support our contention. On November 25, 2020, USACE Colonel Julie Balten acknowledged our letter of October 25, 2020, regarding or rights pertaining to U.S. Patent #7,681,531- *System for Assessing Habitat Value* (Exhibit DD1). On July 7, 2021, the Institute responded (Exhibit DD2, DD3, & DD4) to Chester Jordan, Patent Counsel of the Army, to complete and return Part 227.7004 of the DOD FAR Supplement. This information was requested so the Dept. of Army could review our claim of infringement.  In our phone call and follow-up emails, the Institute was told that this review was straight forward and would only take months not a year.

After a year (July 7, 2022) and follow up emails and left phone messages asking for updates; we have received no updates from Mr. Jordan (Exhibit DD5 & DD6).

Case Background: The basic concepts and examples that support our ecological method was published in a peer-reviewed book (developed with 93 ecological authors and with input from over 600 people) called, *Wildlife-Habitat Relationships in Oregon and Washington* [2001, Johnson & O'Neil, Oregon State University Press, 736 pp.]. The ecological method to assess habitat and functions was developed as a collaborative effort (2004-2007) with 11 agencies that included

the US Army Corps of Engineers (USACE). In 2007, the USACE staff came to the
Institute to use our ecological method to conduct an environmental assessment of
Big Bear Lake, CA. Additionally, we just started the approval process in the Pacific
Northwest for use within the Columbia River Basin with the Independent Science
Review Panel (ISRP). [In 2010, our method was approved by ISRP; and Bonneville
Power Administration and Oregon Dept. of Fish and Wildlife used our approach to
obtain a $150-million-dollar Wildlife Mitigation Settlement]. Thus, because our
approach was new, the USACE started its model review inquiry in June 2007. We
were told, at the time by USACE model contact - David Vigh, that Regional
Approval of our approach would take about 1-year. The USACE did not pay for the
development of the Institute's CHAP approach. Now, 15 years later, the USACE has
not completed the Regional Review.

During this 15-years, our approach has been used to determine fish and
wildlife habitat baseline condition functions and values as well as assessing various
management actions and alternatives for 12 USACE projects: Big Bear Lake
Ecosystem Restoration [W912PL-07-P-0049]; Espanola Ecosystem Restoration
Project [W912PP-10-P-0031 Mod# P0001 ]; Sweetwater – Vernal Pools Complex
Wildlife Habitat Assessment – Baseline Condition Report (near San Diego); San
Juan Creek Flood Risk Management[W912PL-11-P-0026];  San Francisco Bay
Shoreline Combined Habitat Assessment [W912P7-12-C-0005 and Purchase
Request # W62A2B13200802]; Los Angeles River's Headworks' Baseline Condition
and Without Project Ecosystem Restoration Feasibility Study [100-SWW-T26313/

Task 11]; Sun Valley Watershed Ecosystem Restoration [W912PL-11-P-0026];

Habitat Assessment and Modeling for the Prado Basin Feasibility Study [Orange

County Water District Agreement No.: 0911]; Los Angeles River Restoration

Feasibility Study [100-SWW-T31241/ Task 06];  Upper Penitencia Creek, San Jose,

California ~ Environmental and Plan Formulation Support for the Upper

Penitencia Creek Flood Risk Management Feasibility Study. Combined Habitat

Assessment Protocols or CHAP [W912P7-13-C-0013 and Purchase Request #

W62A2B32241457]; Westminster Flood Risk Management Study [W912PL-13-P-

0034]; Aliso Creek Ecosystem Restoration [W912PL-08-F-0009]; Arroyo Seco

Ecosystem Restoration Study [W912PL-13-P-0034 – P00003]; Whittier Narrows-

Santa Fe Dam Safety [W912PL-13-P-0034 – Option 1].

Next, our approach has received 5 USACE Independent Single-Use

Approvals from their National Ecological Planning Center of Expertise (ECO-PCX).

The projects were: Los Angeles River Ecosystem Restoration and Headworks

Projects (06/21/2013), Espanola Valley Ecosystem Restoration, NM (01/16/2014),

South San Francisco Bay Shoreline Restoration, CA (01/16/2014), and Prado Basin

Feasibility Study (07/26/2018).  In 2015-2016 the CHAP approach went under a

National Academy of Sciences Review process (at a $216,000 estimated cost) and

passed (7/26/2018). In response to the comments by the reviewers, they had 23

comments of which 13 identified as significant, 8 media significant, and 2 low

significant. The following information was developed and sent to ECO-PCX, which

resolved all comments. Documents sent to further support our CHAP method were:

22

1) Access to CHAP, 2) CHAP Habitat Measurement Techniques Protocol July 2017,

3) CHAP Documentation (ver. 3.0) July 2017, 4) CHAP Field Data Key Protocol

2017 Final, 5) CHAP User Guide (ver 3.0) July 2017 Final, 6) Response to 5 Non-

Concur Review Questions July 2017, and 7) Sensitivity Analysis July 2017 Final.

The combined reports total nearly 800 pages; this is in addition to the 736-page

book. Our response to reviewer comments were done in concurrence with USACE

ECO-PCX and District staff. In contrast, East San Pedro Bay Regional Certified

Model had 53 pages of documentation. Our approach has been deemed Daubert

Ready by the NOAA Lawyers [see Daubert v. Merrell Dow (1993) 509 U.S. [125 L

ED 2d 469, 113 S. Ct. 2786).

Additionally, two private projects used our approach that was associated with

USACE Regulatory to assess the cumulative effects of a coal mine near Challis,

Washington, and gravel pit development along the Yakima River, Washington. Our

approach information and findings went into Environmental Assessment Report,

and both were accepted by USACE Regulatory, and permits were granted. In 2018

& 2019 the National Oceanic and Atmospheric Administration (NOAA) used our

approach in their Natural Resource Damage Assessment program to assess the

effects and mitigation of a uranium mine in Washington state, there has been no

settlement to date.

At Issue: Maintaining science integrity during a science review maintains

and assures quality models as required in the Assuring Quality Planning Models.

Also, this insures that new models can obtain a fair, timely and unbiased

review. As previously stated, most all habitat evaluations are based in 30 to 45-year-old science where values are normalized on a 0 to 1 or 1 to 100 scale and include the concept of an ordinal scale (poor, better, best). Valuing our natural resources using an approach that includes evaluating concurrently 100s of wildlife species, their habitat components, and biodiversity functions are in step with an ecosystem approach. The Institute's approach moves resource valuations from an ordinal to a continuous scale (more like our economics or money), thereby our method capturing a more realistic assessment value of our natural resources. For example, the East San Pedro Bay project for their preferred alternative produced an average annual habitat units of 160.9 at a cost of $63,400 a unit based on an annual cost of $10.2 million (East San Pedro Bay Ecosystem Restoration Study, City of Long Beach, California, Final Integrated Feasibility Report and Environmental Impact Statement/ Environmental Impact Report, January 2022). In comparison, our approach that was used for the San Francisco Bay Feasibility Study shows an average annual habitat units of 48,508 at a cost of $79 a unit based on an annual cost of $3.84 million (South San Francisco Bay Shoreline, Phase 1 Study, Alviso Ponds and Santa Clara County, CA; Economic Appendix C to Feasibility report/EIS, September 2015). Additionally, the approach can be used state and Regionwide allowing a consistent approach to evaluations and trade-off assessments. That is, by incorporating a more comprehensive ecosystem approach changes how natural resources are valued, thereby, changing the economic benefit analysis along with values to mitigate and compensate. It becomes a game-changing approach and a

move away from the concept of current "business-as-usual".

## LEGAL QUESTIONS

**1)** Once administrative procedures have been codified in law/regulations they need to be consistently applied. USACE had their Assuring Quality Planning Model procedures [EC 1105-2-412 March 31, 2011, & March 31, 2013] that are associated with the Engineer Regulation 1105-2-100 Planning Guidance Notebook [cited in the Final Rule 33 CFR part 36 - Federal Register Volume 86, Number 6, 01/11/2021]. This occurred to comply with The Information Quality Act [Public Law No. 106-554].

**2)** Determine whether the discretionary function exception applies, federal courts use the two-prong approach articulated by the Supreme Court in Berkovitz v. United States (486 U.S. 531 (1988). See generally Jayson & Longstreth, supra note 11, § 3.48) and affirmed by the Court in United States v. Gaubert. (499 U.S. 315 (1991); see generally Jayson & Longstreth, supra note 11, §§ 3.52, 12.06). First, the act must be discretionary in that it involves "an element of judgment or choice" rather than being specifically prescribed by a federal statute, regulation, or policy that leaves the employee "no rightful option but to adhere to a mandatory directive." (Gaubert, 499 U.S. at 322 (quoting Berkovitz, 486 U.S. at 536). Second, if the employee exercises judgment or choice, the challenged action or decision must be based on considerations of public policy, (Id. at 322-23) that is, "susceptible to policy analysis." (Id. at 325).

The Engineering Circular that governs model review (EC 1105-2-412) is a mandatory directive and its purpose, "This Circular establishes the process and the requirements for assuring the quality of planning models" (note: the word Shall is used 5 times; the word Must is used 25 times; Require/Requirement is used 63 times). An example of the timeline in found in EC 1105-2-412 in Figure 1. Figure 1 summarizes the model certification process for existing or revised models and includes an appropriate- timeline for each step.

Nathan Richards, Model Review Manger, presented in September 2015 Modeling Workshop the review process as 3- 9 months to complete (see Exhibit B3). The Institute's Model Review began with a notice to proceed on September 28, 2015; Initial meetings on October 16, 2015, and October 26, 2015; the Panel kickoff meeting on November 2, 2015; and the Panel final report submitted on April 13, 2016. The letter addressing the ECO-PCX Review was provided in a memorandum in March 2016. We received the exact same Memorandum on May 20, 2019. There was no acknowledgment that the Institute submitted 14 pdf files on July 26, 2017, that responded to all outstanding questions. The only outstanding issue we were told by ECO-PCX in 2019 was the Access to the CHAP Method. This was also submitted on July 26, 2017 (Exhibit B1) and was recognized by the Science Review Panel only as a "Low" Concern.

Several specific aggrieved events occurred that factored into USACE's decisions to delay, extend, and eventually stop the Regional Model Review process. These are clear examples of the discretionary function and abuse of process that is

26

not allowed in any Scientific Review. They are found in A) Exhibit A2 - CHAP

History Timeline 2012-2017 as stated in an email on October 4, 2018, from Nathan

Richards to Jesse Ray RE: CHAP Regional Certification Discussion – it states under

History: "One early PCX reviewer opined that CHAP is a black box model, which

notion has tainted perceptions for a number of years", B) August 7, 2017 – "ECO-

PCX receives final model documentation from SPL...As part of the final model

documentation package, NHI provides a document that outlines the proprietary

nature of CHAP and offers options for accessing CHAP. These options were

suggestions and knowing that Corps uses all sorts of other model/software not

within the public domain (also see Nedenia Kennedy's email to Jodi Clifford on

January 30, 2019).  One of these options is for the USACE to buy the proprietary

rights to "obtain full control of the CHAP approach...." Since we don't

approve/certify "black boxes" or things we don't have full access to I'm a little leery

of this situation", [Note: ECO-PCX was told several times that the data system

information was overseen by a team of senior wildlife ecologist and had been

independent review twice] C) Exhibit B4 - Email from Jesse Ray to Nedenia

Kennedy April 12, 2019 "I am curious though: "Do you think Dr. O'Neil knows that

his daughter's efforts are so damaging?" [This is in reference to my daughter

contacting Senator Feinstein's office for help to complete the Regional Model Review

process...] "I also sense an attitudinal hangover, dating back to some initial

perceptions.  I encountered this just last week when I was told by one of those above

Nate [Nathan Richards], once more that the database is a black box, .... Easier to

slam the model than defend it, it seems.... Especially for those who would rather not make the effort to understand it." Note: National Academy of Sciences Review process was completed on April 13, 2016, and there was no mention the CHAP Approach was a "black box". Also note, Exhibit B4 - Email April 12, 2019, Jesse Ray to Michael Scuderi "I have been working with Nate extensively on CHAP over the past year, and I doubt you are going to gain any traction suggesting MVD [ Mississippi Valley District where ECO-PCX resides] use CHAP. I think it would be an effort in futility. Nate's (Nathan Richard) concerns regarding CHAP extend beyond the ecological, and the Habitat Institute has not been making any new friends as of late with their aggressive pushes and political pressuring."

Finally, the Purpose of EC 1105-2-412 found on page 1, 1st sentence, "This circular establishes the process and the requirements for assuring the quality of planning models", science reviews need to stay within the lanes of science not advocating false fabrications, or incorporating a person(s) belief system over the science. All 5 Single –Use Approvals stated the CHAP model is complete and the model meets the criteria in Engineer Circular 1105-2-412: Assuring Quality of Planning Models. Further the circular states, "Models and methods must keep current with advancements in knowledge, technology..." For example, Water Resource Reform Development Act 2014 calls to encourage and incorporate advanced modeling technologies, including 3-D modeling that can expedite project delivery or improve the evaluation of water resources development projects of which CHAP is one.

**3)** Decide if a contract/agreement exists between Institute and USACE. Emails can create and serve as a contract between parties when an intent is established to enter into an agreement. Legally binding contracts may be established through email. Two major pieces of legislation, the Uniform Electronic Transactions Act (UETA) and the Electronic Signatures in Global and National Commerce Act, have stated that electronic communications can constitute legally binding contracts, also the 2013 case of *Forcelli v. Gelco* put the principles guiding such laws into practice. A contract can be created over a series of emails; a preliminary email may constitute a binding contract regardless of whether it references a future formal agreement that has yet to be agreed to. Certain terms used in emails can support and form a contract obligation like, reliant on, establishing an agreement, agree to pay for work, we look forward to working with you on a successful conclusion. These terms were used in USACE emails we viewed them prior to releasing our documentation as a binding acceptance of a contract.

At our initial call (July 2, 2007) to talk about CHAP certification with David Vigh, Thomas Keeney, and Jim Jacobson, it was discussed that the approach was developed and functional. The Institute reiterated no development cost would be charged if we can get Regional Certification/Approval. This question came up again in the Los Angeles River project on a phone call with Thomas Keeney and someone from Corps HQ because they thought we were going or had already charged them $750,000 for development costs. The Institute reiterated our initial understanding, and nothing was ever charged (see Exhibit C5). The initial break from the Corps'

29

lack of movement on Regional Approval began on June 27, 2018 (see Exhibit C6) when the Institute was first notified by Chris Jones that CHAP would be another Single Use Certification for the Prado project (though the Corps knew about this since August 15, 2017, Exhibit A2). The Institute responded that we would change the conditional use statement on the CHAP User Guide to read "US Army Corps of Engineers Approved Method." Nathan Richards responded on June 27, 2018, that The CHAP method and user guide are not being approved at this time. We (ECO-PCX) are recommending approval of the Prado Basin CHAP analysis..." The Institute then stopped and talked with a number of other colleagues to get a read on the Corps request, and the overall feedback we got was "recommending the approval of the CHAP analysis is recommending the CHAP method" (see Email July 10, 2018, Exhibit C6). So, the ECO-PCX Review Process finally came to a crossroads with the Institute, as follows:

Email Exchange July 18 thru July 20, 2018:

Email Richards to O'Neill July 18, 2018, 6:58 AM Subject Prado Basin...Single-Use Approval Questions, it states ".....The ECO-PCX evaluated the CHAP analysis used for alternative evaluation and comparison in the Prado Basin Feasibility Study. Based on the results, we're planning to recommend single-use approval of the model for the study. This recommendation will be sent to the ECO-PCX Director for approval. Once approved the model documentation, user guide, and associated documentation will be included in our files and posted to the IWR

Planning Assistance Library. The documentation could also be provided to others, as requested.

Thanks! Nate

Email O'Neill to Clifford July 18, 2018, 11:39 AM Subject Prado Basin...Single-Use Approval Questions, it states "Hi Jodi: As we discussed yesterday, things are shifting a bit at the PCX. As you mentioned the single-use approval though is a step forward in approving CHAP is not really what we are striving for because it means that next project we have to go through the whole process again. The purpose of doing the in-depth CHAP review is for Regional Approval so we would not have to be in continual review with PCX. The goal of Regional Approval has been reiterated in emails and write-ups prior, during, and after our main science review...

Additionally, in a recent email from Chris Jones (June 27, 2018), Chris reiterates that Nate is referencing only the CHAP User Guide to be posted. In Nate's recent email, he is now talking about all of CHAP's documentation. As I mentioned yesterday, the Institute's Board is looking to conclude the approval process and would like a commitment to that along with a timeline for making it happen. So please let me know when within the next couple of days, it is good from you, Chris, Jesse, and others to gather for a strategy talk. Again, starting next week I will be out for about the next 10 days. Best, Tom

Email O'Neill to Clifford July 19, 2018, 10:18 PM Subject PCX-CHAP, it states "Jodi: I have been thinking about our last call but it seems more important

than ever that PCX follows thru with Regional Approval because as you stated the need for Approved models hasn't gone away. I hope you can convince them to go with just what they need (user guide) for Prado and if you can find out if they have a work plan/budget that includes finishing the Regional Approval process.

Because there are no immediate projects in the que then we should move to the next step of how they want to have access to CHAP. Either own it out right or work on developing collaborative access. Mickey Porter also had some interest in this. Best, Tom

Email Clifford to O'Neill July 20, 2018, 8:07 AM Subject: RE: PCX-CHAP, it states "Thanks Tom. It is not that I disagree. It is simply that if we can't come to terms on Prado, our entire program will be in a bad place. I think collaborative access is Probably the best way to go, but even if we had agreement, that would take a time which we no longer have. Will call when I get in. Jodi"

Email O'Neill to Clifford July 20, 2018, 12:54 PM Subject: Agreement to Work on CHAP Access, it states "Hello Jodi: As a follow-up to our conversation today 07/20/2018 with regards to changing the condition of use on the CHAP User Guide and CHAP Documentation to reflect Corps approval for the Prado Basin Feasibility Study.

The Habitat Institute agrees to make said changes. These changes are reliant on the Corps concurring to start to address working collaboratively to complete the next steps in CHAPs Regional Approval. The goal of the next steps are to work towards completion of the regional approval by resolving how the CHAP approach

is accessed and implement by the Corps regional staff. Additionally, a statement of works will be collaboratively developed as a precursor to a Memorandum of Understanding or Agreement, and it is agreed upon that THI would be paid for this work.

The Corps concurs that it is imperative to start addressing this issue starting early in fiscal year 2019 (October). You had mentioned that you could assign Jesse Ray, as he is currently in the Planning Associates Program working on Streamlining Model Approval within the District, as well as Chris Solek could also be involved.

We look forward to collaborating in the completion of this regional approval process with you and attached please find the documents with revisions that drop the condition of use statements and state Corps Approval by the National Ecosystem Planning Center of Expertise for Prado Basin Feasibility Study. If you have any questions or further needs please let me know. have a great weekend, Tom"

Email O'Neill to Clifford July 20, 2018, 1:03 PM Subject: Agreement to Work on CHAP Access Resend, Resend CHAP Documentation, O'Neill Signs Off from All Communication July 20, 2018, 1:05 PM – For heart surgery procedure and recovery July 23 to July 27, 2018.

Email Clifford to O'Neill July 20, 2018, 2:06 PM Subject: Agreement to work on CHAP Access Resend, it states "Thank you, Tom. We look forward to working with you on a successful conclusion to Regional Approval. For clarification, we

agreed to look at appropriate contracting mechanisms to defray NWHI expenses for costs that may be incurred as we move forward again to complete Regional Approval. As I noted previously, if, for example a Memorandum of Agreement turns out to be our ultimate solution, NWHI may want to have that agreement reviewed by your own Counsel, etc. I would need to check with our Contracting, but I do not believe we could find a mechanism to defray those types of expenses.

Now that we have a seeming path forward to complete regional certification of the CHAP model, we can develop an appropriate Scope of Work. Just so you are aware that I cannot personally commit the Federal Government to make an expenditure. It will be the contract or purchase order that will be the formal agreement for this stage of the certification discussion. Some type of Memorandum between the Corps and the NWHI will likely be the ultimate outcome of Regional Approval.

Thank you again. I know this process has been cumbersome. I just left you a message to this effect. Please call me on 213-440-4399 (office cell) if you have any questions. Jodi"

Email Exchange One Year Later July 19, 2019

Email O'Neill to Clifford July 19, 2019, 7:17 AM Subject: CHAP Regional Approval – Please Read, it states, Hello Jodi, as you know, on July 20, 2018, we agreed to work collaboratively for a successful conclusion to the regional approval of CHAP. Since July 2018, we have made several requests and most all have gone unanswered...Six weeks ago, the ECO-PCX released a Memo of Record [sic that

we got 3 years ago] and we have not even received an email or a phone call from the Corps. I can assure you this is not what the Institute was agreeing to in meeting the Corps needs on July 20, 2018 that we would be in the exact same position as we were a year ago. No reply or response from the Corps to us is interpreted as a decision not fulfill our prior agreement and understanding. I find the continual delay and non-progressive stall by the Corps in addressing the regional approval of CHAP disconcerting, and as I have said before abusive...(see Letters in Exhibits C1, C2, and C3).

*****End of Email String*****

The Institute believes that the last email on July 20, 2018, by Ms. Clifford was sent as a means to have counter statements on record to counter her commitment that was given on the phone to Mr. O'Neill earlier. Further, Ms. Clifford (we learned later) had another joint call with ECO-PCX and others to discuss this situation at 2:30 PM. Thus, after the fact of receiving the documentation as we agreed to, "she needed to make clarifications and to make me aware she cannot commit the Federal Government to make an expenditure". This email clearly modifies our agreement, and she knew I was gone. In contract law, you need to have a meeting of the minds so to speak, and not alter the terms after you receive the product. Ms. Clifford, who is very experienced with contracts, at the time she sent the last email at 2:06 PM should have stopped the process of forwarding the CHAP documentation and waited to hear from me. Time was not a concern because USACE staff knew about 1-year earlier they were going for a

Single-Use Approval. But instead, they fast tracked the Single-Use Approval for the Prado project, and it was given July 26, 2018 (Exhibit C7). Note: I was released from the hospital on Friday afternoon July 27, 2018. Also see Exhibit C4 that also addresses this circumstance.

Based on a review of their performance and outcome, the USACE never really had a Good-Faith commitment for Regional Approval of CHAP. The Institute statements were clear leading up to surrendering our documentation that we would work collaboratively to complete the Regional Review process starting with developing a scope of work; that time was of the essence i.e., in months not a year, and be paid for our participation. The record shows a lack of follow thru on all these key points that the Institute relied on upon releasing our documents. The Institute believes that the steps and interaction with USACE staff created obligations for the Institute and the Corps that are enforceable. The Institute met its obligation in a timely good-faith manner. By acting in a manner of disregarding our commitments, they have significantly impacted our business which included loss of contract and staff.

4) Determine if an infringement of our patent occurred. First, Exhibit DD1 shows that the Institute had contacted USACE about the Patent Infringement on October 25, 2020, which Colonel Julie Balten acknowledge in her November 20, 2020, letter. Further, both Exhibit DD2 & DD3 explain in detail the East Bay San Pedro method infringing on our US Patent No. 7,681,531 – System for Assessing Habitat Value. The East San Pedro Bay method falls within the literal scope of

Claim 29 because the relevant part of Claim 29 recites "wherein the act of establishing a habitat value further comprises the act of determining a species-specific value for the geographic site." The word "comprises" in the claim limitation is open-ended, meaning that it can include additional steps or calculations. Our Claim clearly shows the infraction and the remaining Exhibits DD4, DD5, & DD6 are correspondence requesting updates which have been to no avail, as we have not gotten any response, we are now at 3 years since notifying the USACE.

**Attempts to Resolve Issues:** The Habitat Institute has made numerous attempts to resolve these issues over the years which are documented in emails, letters, and phone calls. Specifically, for Claim #B- Federal Tort, see Exhibit B5 - Certified Letter May 16, 2022, From Nicholas M. Satriano, Supervisory Attorney, Chief Tort Claims Settlements Division) "you may seek redress for these alleged acts by filing a lawsuit".. if you are dissatisfied with the denial of the claim, you may file suit in an appropriate US District Court no later than six months from the date of mailing. Also, see Exhibit B6 - Email sent 9/2/2022 and by Certified Mail 9/6/2022 From Thomas O'Neill to Nicholas M. Satriano clarifying our understanding. Next, Claim #C - Breach of Contract, see Exhibits C1, C2, & C4. Finally, Claim #D - Patent Infringement, see Exhibit D1-D6.

CONCLUSION

WHEREFORE, I the Plaintiff  THE HABITAT INSTITUTE,  THOMAS O'NEILL, pray the above-entitled matter is reviewed, on the entire record, in the light of the existing

facts and laws, and the Court's decision is that the Defendants is held accountable to fair and just consequences by this Court and are Ordered to stop infringing on the Plaintiff's patent, issue the CHAP science's regional certification/approval without further reviews, and provide funding for actual damages in the amount of $41,837,543.00 that would cover 12-years (which coincides with the time denied our certification/approval) that would fund the structure for our approach, data (including imagery), marketing, training, consultation, and dissemination, to allow federal, state, and tribal entities to use freely our credible habitat and biodiversity assessment approach. The states covered would be all of California, Oregon, and Washington. Also, we would like to have considered exemplary damages (Claim B) for the harm they have intentionally caused.

I the Plaintiff declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 15TH of November 2022

Thomas A. O'Neill
(Plaintiff)

## CERTIFICATE OF WORD COUNT

Case No.

Case Name:

THE HABITAT INSTITUTE, THOMAS A. O'NEILL, *(Per Se)*

vs.

THE UNITED STATES ARMY CORPS OF ENGINEERS: JODI CLIFFORD, *Chief Environmental Resource Branch, Los Angeles District;* NEDENIA KENNEDY, *Leader Planning, and Policy, South Pacific Division;* NATIONAL ECOSYSTEM RESTORATION PLANNING CENTER OF EXPERTISE: GREGORY MILLER, *Director;* NATHAN RICHARDS, *Model Review Manager;* ANDREW MACINNES, *Operating Director;* GARY YOUNG, *Director;* CHESTER JORDAN II. (SBN *not found*); AND BRIAN M. CHOC (SBN 335644) *Attorney*

Document Title:

COMPLAINT

Pursuant to Rule 33.1(h) of the Rules of this Court, I certify that the accompanying COMPLAINT was prepared using Century Schoolbook 12-point typeface, containing 8970 words. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED this 15TH day of November 2022.

Thomas O'Neill (Pro Se)

P.O. Box 855

Corvallis, OR 97339

541.753.2199

tom@thehabitatinstitute.org